UNITED STATES *v.* JACKSONVILLE PAPER CO.

JACKSONVILLE PAPER CO. *v.* UNITED STATES

**No. 4742.**—Invoices dated Gothenburg, Sweden, February 8, 1936, etc.
Certified February 10, 1936, etc.
Entered at Jacksonville, Fla., March 14, 1936, etc.
Entry No. J–271, etc.

(Decided February 26, 1940)

*Webster J. Oliver*, Assistant Attorney General (*Daniel I. Auster* and *Samuel D. Spector*, special attorneys), for the United States.
*Kay, Ragland & Kurz* (*Louis Kurz* of counsel) for the importer.

KEEFE, Judge: The appeals listed in schedule A hereto attached and made a part hereof involve the proper value for duty purposes of certain machine-finished kraft paper variously described on the invoices as unglazed pure kraft wrapping paper, M. F. kraft sack paper, or unglazed kraft sack paper in reels. Reappraisement

113624–A, the initial case, is an appeal taken by the collector. The remaining cases were appealed by the importer.

All of the merchandise was invoiced at U. S. $2.60 per 100 pounds, packed, less 2 per centum discount, c. i. f. Jacksonville, Fla., including nondutiable charges of inland freight, ocean freight, and insurance. In reappraisement 113624–A the merchandise was entered as invoiced, less the nondutiable charges and was appraised as entered. In the remaining reappraisements the importer added on entry so as to make the value equal to 285 Swedish kroner per 1,000 kilos, less cash discount. The appraiser advanced the entered price to equal 310 Swedish kroner per 1,000 kilos, packed, except in reappraisement 114543–A where the entered value was approved. In cases where the importer entered at 285 Swedish kroner per 1,000 kilos, the additions were made to equal the foreign value for home consumption and the appraiser's advances were added to equal a higher foreign value.

At the trial on February 28, 1938, the Government, without objection, introduced the record in *Arkell Safety Bag Co.* v. *United States*, reappraisement 115859–A. This record was made June 23, 1937, but was not decided until April 21, 1938. See Reap. Dec. 4301. In the incorporated case the single judge, sitting in reappraisement, held, that ample proof had been submitted to sustain the plaintiff's contention that there was a combine in Sweden controlling the foreign prices of kraft paper sold for home consumption. From the evidence the court further found that the export values of the kraft paper represented the value for dutiable purposes. Appeal was taken from the single judge and the Third Division there held that there was ample evidence to sustain the view of the lower court that the prices of kraft paper for home consumption in Sweden were controlled and that the value for dutiable purposes was represented by the export value, there being no foreign value because of the control exercised by the combine in Sweden. The appellate division, however, reversed the lower court upon the ground that proof of all the elements necessary for a legal appraisement were not present, to wit, the record failed to establish a usual wholesale quantity for export, and the case was remanded for dismissal of the appeal. See Reap. Dec. 4513. Thereafter, a rehearing was granted and both parties moved to remand the case to the trial court for all purposes. Thereupon judgment was entered remanding the case to the single judge. See Reap. Dec. 4548. Upon remand the trial court heard further evidence, which is not a part of the record incorporated in the case at bar, establishing that the price of the kraft paper there in question was the same regardless of quantity purchased and was in no way affected by the quantity. The trial court, in Reap. Dec. 4670, upon remand held that the foreign-market prices were controlled; that there was no foreign value; and that the proper basis for appraisement was the export values as shown by the invoices. No appeal was taken from that decision.

The merchandise in the reappraisements before me was manufactured by H. Reeve Angel & Co. of Gothenburg, Sweden, and J. H. Munktells of Grycksbo, Sweden. The testimony establishes that all of the paper involved herein was identical and also that the same conditions prevailed in the markets of Sweden as in the cases the subject of decision in the *Arkell Safety Bag Co.* v. *United States, supra.* The evidence further establishes that the paper in question is packed in large converter rolls having a diameter of 29 inches and weighing several hundred pounds; that the only use therefor is in the making of bags; that the paper in question was all used for that purpose; that paper of different widths does not affect the price thereof as paper is sold upon the basis of the hundred pound unit; that there is a difference in the price of kraft paper used for wrapping purposes and that used for making bags; that the paper for wrapping purposes is put up in rolls 9 inches in diameter; that the difference in price between kraft paper put up in rolls of 9 inches in diameter and 29 inches in diameter is prevalent in the paper business throughout the world, including the United States, where the price difference is one-half cent a pound. It was further established that all of the paper imported herein was packed in the same manner and was used in bag making; that it consisted of a machine-finished (M. F.) kraft paper, which had not been glazed on one side as in the *Arkell Safety Bag Co.* case, *supra.* There the paper glazed on one side was known as M. G. kraft paper, and was sold for a higher price.

From a careful consideration of the evidence before me, I find the following facts:

1. That the merchandise in question consists of machine-finished paper described on the invoices as unglazed pure kraft wrapping paper, M. F. Kraft sack paper, or unglazed kraft sack paper in reels, imported from Sweden during the year 1936 in so-called converter rolls of 29 inches in diameter in natural brown color.

2. That the foreign market during said period for such or similar merchandise was controlled, being the subject of restrictions fixed by a cartel agreement between wholesalers and dealers.

3. That there was no foreign value for such or similar merchandise at the time of exportation of the merchandise herein.

4. That the proper basis for appraisement is the export value.

5. That the export value thereof, as defined in section 402 (d) of the Tariff Act of 1930, is $2.60 per 100 pounds, less 2 per centum discount, less nondutiable charges of carriage from mill to port of shipment, ocean freight and insurance.

As matter of law, I hold that the dutiable value of the merchandise herein is the export value thereof, as set forth in paragraph 5 of the findings of fact. Judgment will therefore be rendered accordingly.